Case 2:16-cv-00411   Document 19   Filed on 12/14/16 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
December 15, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| THOMAS EARL GLADDEN, SR., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-411 |
| | § | |
| MATT BARBER, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN ACTION**

Thomas Earl Gladden Sr. is a Texas state prisoner appearing *pro se* and *in forma pauperis*. He filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated an Eighth Amendment excessive force claim against Defendant **Sergeant Salinas** and Defendant **Sergeant Mackey** in their individual capacities. The undersigned will order service on Sergeant Salinas and Sergeant Mackey. Additionally, the undersigned will order service on **Warden Miguel Martinez**[1] for any injunctive relief that may be appropriate.[2] The undersigned respectfully recommends Plaintiff's remaining claims be dismissed as to each of the other named defendants for the reasons set forth below.

---

[1] Plaintiff named Matt Barber as a defendant in this action. However, Matt Barber is no longer the warden at the McConnell Unit and the undersigned has substituted the current warden, Miguel Martinez.

[2] Plaintiff is seeking injunctive relief for him to be returned to Maryland. The undersigned, without deciding whether the remedy Plaintiff is seeking is appropriate, orders service on Warden Martinez as the person in the best position to change policies at the McConnel Unit in the event any injunctive relief is warranted.

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined in the McConnell Unit in Beeville, Texas. He is serving a life sentence without parole for a 1999 murder conviction in Maryland. On October 15, 2013, Plaintiff was transferred from custody in Maryland to Texas for apparent safety reasons.[3] Plaintiff has been placed in five different units since being transferred to TDCJ custody but the incidents giving rise to this case arose while Plaintiff has been incarcerated at the McConnell Unit in Beeville, Texas. Plaintiff has been housed at the McConnell Unit since approximately March 1, 2016.

Plaintiff filed suit on September 15, 2016 asking for some kind of relief for physical brutality and cruel and unusual punishment. (D.E. 1). Plaintiff named Matt Barber and the Attorney General of the State of Maryland as defendants. A *Spears*[4] hearing was conducted on December 9, 2016. The following representations were made in Plaintiff's original complaint (D.E. 1) or at the hearing:

---

[3] *See* Tex. Crim. Proc. Code art. 42.19, art. IV(a) ("Whenever the duly constituted authorities in a state party to this compact, and which has entered into a contract pursuant to [this compact], shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, such official may direct that the confinement be within an institution within the territory of such other party state.")
[4] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Plaintiff alleges he previously suffered a broken right wrist on November 3, 2015 in an unrelated incident and that injury required surgery, which took place on August 17, 2016. (D.E. 1, Page 2). As a result of his surgery, Plaintiff received a "cuff pass" which allowed him not to be placed in handcuffs in situations where handcuffs would otherwise have been required. (D.E. 1, Page 2).

On September 4, 2016 sometime between 2:30 and 3:30 p.m., Sergeant Salinas came to Plaintiff's cell and asked him about a coaxial cable in Plaintiff's possession. (D.E. 1, Page 1). Sergeant Salinas wanted to have Plaintiff's cell door opened and Plaintiff "inform[ed] him if [the corrections officer in charge of the door] roll that door and you come in this cell I am not responsible for what[']s going to happen to you, because I feel my life is in danger." (D.E. 1, Pages 1-2). Salinas left and came back with Sergeant Mackey and initiated a search of Plaintiff's cell for contraband. (D.E. 1, Page 2). Plaintiff handed his cuff pass paperwork through the food tray slot to the officers. (D.E. 1, Page 2). According to Plaintiff, both Salinas and Mackey looked at it and Mackey stated he did not care what the pass said. (D.E. 1, Page 2). Salinas and Mackey ordered Plaintiff to stick both arms out so he could be cuffed and Plaintiff asked to call a Lieutenant. (D.E. 1, Page 2). At that time, Mackey left and returned with tear gas and the use of force camera. (D.E. 1, Page 2).

Once Mackey returned, Salinas ordered Plaintiff to comply so hand restraints could be placed on him. (D.E. 1, Page 2). Plaintiff tried to tell the officers he had a "cuff pass" but eventually he complied with the orders to be handcuffed from behind. (D.E. 1, Page 2). Plaintiff stated he experienced pain and began shouting "my wrist" and told the

officers he was not refusing. (D.E. 1, Pages 2-3). Once restraints were on both wrists, Plaintiff was walked to the shower area where he was left in cuffs for the duration of the search which Plaintiff estimates lasted 10 to 20 minutes. (D.E. 1, Page 3).

When the search had concluded, Plaintiff was informed they were confiscating his coaxial cable and he was placed back in his cell. (D.E. 1, Page 3). Plaintiff could not get his hands back in the slot because his arms and hand had gone numb along with some shooting pain going up and down his right arm. (D.E. 1, Page 3). Plaintiff alleges Salinas and Mackey yanked and twisted his right arm while removing the cuff from his left wrist. (D.E. 1, Page 3). Plaintiff further alleges the officers twisted and pulled his fingers causing his pinky finger to bleed and his hand to swell. (D.E. 1, Page 3). According to Plaintiff, he showed the officers his hand and they stated "you [are] not going to medical." (D.E. 1, Page 3).

Plaintiff attempted to get the attention of various corrections officers in order to get medical treatment for his injuries. (D.E. 1, Pages 3-8). Plaintiff was taken to medical sometime between 3:00 and 5:00 a.m. on September 5, 2016, where he received some treatment for his pinky finger. (D.E. 1, Page 5). When the medical personnel attempted to ask him about his wrist Plaintiff was reluctant to describe the incident to the medical staff in the presence of corrections officers. (D.E. 1, Page 5). Plaintiff indicated he did file a grievance against Sergeant Salinas and Sergeant Mackey for the alleged incident.

Plaintiff sued the Attorney General of the State of Maryland and Matt Barber because he had previously filed a writ of habeas corpus against these two defendants. Plaintiff did not specifically name Sergeant Salinas or Sergeant Mackey but at the *Spears*

hearing he indicated he intended to bring this lawsuit against them as the officers involved in the incident.

### III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis*, the Court shall evaluate the complaint and dismiss it without service of process, if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F. 3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Id*. "Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any

set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id*. (citations omitted).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

Inmates have a constitutional right to be free from the use of excessive force. *Anthony v. Martinez*, 185 Fed. Appx. 360, 363 (5th Cir. 2006). To state a claim for excessive force, a prisoner-plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis*, but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6, 10 (1992); *Gomez v. Chandler*, 163 F.3d 921, 923-34 (5th Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). The factors to be considered are (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez*, 163 F.3d at 923.

In *Wilkins v. Gaddy*, the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." 559 U.S. 34, 40 (2010) (per curiam). The Court grounded this conclusion on the principle that "the core judicial inquiry [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. at 37 (citations omitted).

Although a *de minimis* injury is not cognizable, the extent of the injury necessary to satisfy the injury requirement "is directly related to the amount of force that is constitutionally permissible under the circumstances." *Ikerd v. Blair*, 1010 F.3d 430, 434-35 (5th Cir. 1996) (citations omitted); *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir 2004) (noting that the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is . . . subjective—it is defined entirely by the context in which the injury arises.") In general, the courts have concluded that the amount of injury necessary to satisfy the requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Williams*, 180 F.3d at 703-04. Thus, courts may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such a wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

## IV.    DISCUSSION

### A.    Eleventh Amendment Immunity and Official Capacity Claims

Plaintiff does not indicate whether he is suing defendants in their official or individual capacities. A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff is suing Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment.

### B.    Claims Against the Attorney General of the State of Maryland

Plaintiff named the Attorney General of the State of Maryland as a defendant. Plaintiff sued this defendant because Plaintiff wants to be returned to Maryland to serve

the remainder of his sentence. However, Plaintiff has not stated any cause of action against this defendant. The Attorney General of the State of Maryland had no personal or even supervisory involvement in the facts giving rise to this action. Therefore, the undersigned recommends the Court dismiss Plaintiff's claims against the Attorney General of the State of Maryland for failure to state a claim and/or as frivolous.

### C. Plaintiff's Excessive Force Claims Against Salinas and Mackey

Accepting Plaintiff's allegations as true, which is required at this stage of the proceedings, Plaintiff has alleged sufficient facts to state a claim against Sergeant Salinas and Sergeant Mackey for excessive force in violation of the Eighth Amendment. Plaintiff alleges he was put in wrist restraints even though he possessed a "cuff pass" due to his recent surgery. Plaintiff alleges injuries to his hand and arm resulting from the incident including a wound on his finger, numbness and swelling to his hand, and shooting pain in his arm. Therefore, the undersigned respectfully recommends Plaintiff's claims against Sergeant Salinas and Sergeant Mackey for excessive force be **RETAINED**.

### V. RECOMMENDATION

For the purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, support an excessive force claim against Sergeant Salinas and Sergeant Mackey. Accordingly, it is respectfully recommended that Plaintiff's excessive force claim against Sergeant Salinas and Sergeant Mackey be **RETAINED** and service be ordered on these defendants in their individual capacities only. It is respectfully recommended service be ordered on Warden Miguel Martinez for any possible injunctive relief that may potentially be awarded to Plaintiff. Further, it is respectfully recommended Plaintiff's

remaining claims against each of the other defendants be **DISMISSED** for failure to state a claim and/or frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

ORDERED this 14th day of December, 2016.

                                                    Jason B. Libby
                                       United States Magistrate Judge

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).